UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSE FERNANDEZ,                                            :

                Petitioner,                 :            07 Civ. 2532 (RJS) (AJP)

        -against-                                :            **REPORT AND RECOMMENDATION**

DALE ARTUS, Superintendent,                         :
Clinton Correctional Facility,
                                          :
                Respondent.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard J. Sullivan, United States District Judge:**

                Pro se petitioner Jose Fernandez seeks a writ of habeas corpus from his May 11, 2004

conviction, after a jury trial in Supreme Court, Bronx County, of second degree murder, and sentence

of twenty-five years to life imprisonment.  (Dkt. No. 2: Petition ["Pet."] ¶¶ 1-5; see Dkt. No. 8: ADA

Biedrzycki Aff. ¶ 4.)

                Fernandez's habeas corpus petition asserts that the trial court erred by admitting an

accomplice's fingerprints because the fingerprints were "entirely irrelevant to the question of

Mr. Fernandez's guilt and where its admission greatly prejudiced Mr. Fernandez" and "served only

to improperly bolster the identification of Mr. Fernandez."  (Dkt. No. 2: Fernandez Br. at 13-14; see

id. at 13-22.)

                For the reasons set forth below, Fernandez's habeas petition should be DENIED.

H:\OPIN\FERNANDEZ-JOSE

## FACTS

### The Trial

On April 20, 2004, Fernandez proceeded to trial before Justice Harold Silverman and a jury in Supreme Court, Bronx County. (Dkt. Nos. 9-10, 12: Trial Transcript ["Tr."] 1.)

### The Robbery and Murder

On the night of September 14, 1987, Mildred Diaz and fifteen to sixteen of her friends and family, including Juan Tavares and Jose Gomez and their wives and sons, gathered at Diaz's family's well-lit Bronx apartment. (Dkt. Nos. 9-10, 12: Tavares: Tr. 238-40, 261-63; Diaz: Tr. 326-29, 343, 365-71.) Tavares, Gomez and their sons left the apartment to buy ice cream. (Tavares: Tr. 240-41, 263-64.) Around 9:00 p.m., while on the phone in her brother's bedroom, Diaz observed an unknown man, whom she assumed was her brother's friend, "walking back and forth" in the apartment. (Diaz: Tr. 327-30, 364-65.) The man, whom Diaz identified at trial as Alfredo Medina,[1] entered the bedroom and asked "if [she] was calling the police and put a gun to [her] face." (Diaz: Tr. 330-33.) "[P]retending like he was a cop," Medina spoke into a walkie talkie and asked for money and drugs. (Diaz: Tr. 333-34.) Medina moved Diaz to her bedroom, where she joined several family members. (Diaz: Tr. 334-35, 371, 381-84.) Another man with a mustache and "very full and very thick . . . arched" eyebrows, who Diaz identified at trial as Jose Fernandez,[2] stood at

---

[1]     Upon being shown a photograph of Alfredo Medina at trial, Diaz identified him as the first man that put a gun to her face. (Diaz: Tr. 332-33.)

[2]     At trial, Diaz testified that Fernandez "look[ed] older and different. He had a mustache back

(continued...)

her bedroom doorway, about four feet away from her, "[s]winging . . . around" a gun.  (Diaz: Tr. 336-37, 343-46, 358, 382-83.)  The room was "very bright[ly]" lit.  (Diaz: Tr. 358-59.)  Fernandez instructed Diaz not to look at him, but she "couldn't look [the] other way.  [She] just kept only thinking, if [she] looked away, he might shoot [her] so [she] couldn't take [her] eyes off of him." (Diaz: Tr. 344-45.)  While Fernandez guarded Diaz and the others, Medina and an unidentified third man searched the apartment for money and drugs.  (Diaz: Tr. 345-46.)  After Diaz spent twenty to thirty minutes with Fernandez, Medina took Diaz out of the bedroom to help find some keys and other items.  (Diaz: Tr. 347-49, 413.)

Meanwhile, Gomez and his son returned to the apartment to drop off the ice cream. (Tavares: Tr. 240-42.)  When Gomez knocked on the apartment door, one of the men instructed Diaz to open the door, and he herded Gomez and Gomez's son into the apartment's bathroom.  (Diaz: Tr. 349-52, 376-79, 381.)  Diaz was returned to her bedroom and Fernandez instructed her and the others to lie "[f]ace down on the bed."  (Diaz: Tr. 352-54, 381, 408-09, 412-13.)

After waiting outside the building for ten minutes, Tavares and his son went to Diaz's apartment because Gomez was taking too long to deliver the ice cream.  (Tavares: Tr. 241-42, 265-

---

[2]/    (...continued)
then.  His eyebrows were fuller."  (Diaz: Tr. 337.)  The prosecutor showed Fernandez's 1989 alien registration card photo to Diaz.  (Diaz: Tr. 340, 342.)  Diaz stated that the photo was a "fair and accurate representation of the way [Fernandez] looked  . . . on September 14, 1987," except that the photo showed Fernandez with a goatee.  (Diaz: Tr. 342-43.)

67.)  When Tavares knocked on the apartment door, Medina,[3] who had "light skin" and was "taller"

than Tavares, and Fernandez, who Tavares described as a "shorter," "darker" skinned man holding

a revolver, opened the door.  (Tavares: Tr. 242-45, 253, 267-69, 332.)[4]  Medina instructed Tavares

to "'[c]ome in'" and Fernandez put the revolver up to Tavares' head and escorted Tavares and his son

to the bathroom.  (Tr. 253-54, 267-70.)  Fernandez ordered Tavares not to look at him, and Tavares

complied due to fear for his safety.  (Tavares: Tr. 267, 269-70.)  After less than three minutes,

Fernandez fired a shot into Tavares' arm and another into Gomez's head.  (Tavares: Tr. 254-59, 271;

Diaz: 353-54.)  Diaz heard the shots while laying face down on her bed. (Diaz: Tr. 354, 384-85.)

Tavares, with a bloody hand and holding his son, ran into Diaz's bedroom and unsuccessfully

attempted to escape through the bedroom window.  (Tavares: Tr. 257-58, 284; Diaz: Tr. 354-55.)

Ultimately, a security guard opened the apartment door, Tavares went to the street and the police

took him to the hospital.  (Tavares: Tr. 258.)

### The Police Investigation

When the police arrived at Diaz's well-lit apartment, they found Gomez dead on the

bathroom floor.  (Corrigan: Tr. 80-84, 105-06.)  Diaz described Fernandez to the police as a twenty

---

[3]     At trial, upon being shown a photograph of Medina, Tavares identified Medina as the man who opened the apartment door.  (Tavares: Tr. 243, 332.)

[4]     In January 1989, at a Manhattan police precinct, Tavares identified Fernandez as the man holding the gun, the "shooter."  (Tavares: Tr. 252-53, 277, 280; Ryan: Tr. 486-88, 507-08.) At trial, however, Tavares could not identify Fernandez as the man holding the gun because fifteen years had passed.  (Tavares: Tr. 243, 245-46, 252-53.)

to thirty year-old Hispanic male weighing 140 to 150 pounds with dark brown skin, black hair, arched eyebrows and brown eyes who spoke Dominican-accented Spanish.  (Diaz: Tr.  361-62.)

On December 12, 2001, Fernandez was arrested in the Dominican Republic, where he had been living.  (Breton: Tr. 56-62.)  Special Agent Rafael Reyes, who coordinated Fernandez's arrest with the Dominican government, testified that at the time of Fernandez's arrest, Fernandez was fifty-one years old, about five feet seven inches tall, 160 pounds, and had a mustache.  (Reyes: Tr. 19, 23, 25, 32-36, 40; Breton: Tr. 59-62.)

### Identification Evidence

Fernandez's defense counsel, David Blackstone, objected to the introduction of Medina's fingerprints and the following colloquy ensued:

> MR. BLACKSTONE:  The principal issue I want to take up now and I anticipate [A.D.A.] McCarthy said his fingerprints were found on the scene . . . . I don't see anything pertinent whatsoever as far as the prints of a co-defendant found on the scene.  It's not relevant evidence against Mr. Fernandez.  He is not on trial.
>
> . . . .
>
> MR. BLACKSTONE:  And, Judge, since you're touching on the subject, I don't think they could bring out the extraneous evidence that some print lifts of Alfredo Medina were positive.  Prints were positive as to Medina.  This is irrelevant.
>
> THE COURT: It is probative to this extent.  Our Courts have held that a witness makes a correct identification, that could be brought out.  A witness makes an incorrect identification, it could be brought out.  We have had negative identification brought out.  The People have been shown the witness that none of them did not identify someone who was not involved, so there are a number of cases that have permitted that testimony and that type of evidence.
>
> What [A.D.A.] McCarthy is trying to do circumstantially is to show that the witness a year after the incident was able to identify someone related to the incident.

MR. BLACKSTONE: Judge, may I say that that is collateral to the issues of this case, namely Jose Fernandez' guilt.  The fact that they have perhaps an amount of evidence against Medina, they can't keep pouring it on.  It still says nothing about Jose Fernandez' guilt.  It is bolstering.  What they are trying to do is say you believe Mildred Diaz and you believe . . . . Mr. Tavares because another person's fingerprints that they accused was found there and there is no nexus between the two.  It is bolstering as if it is offering character evidence for Mr. Tavares and Ms. Diaz that it's someone's opinion that they're very good at identifying people.  It gets no better than that and it's not permitted and in my view it's collateral.  It is bolstering and it's prejudicial to the defendant.

[A.D.A.] MCCARTHY:  I think not only is it probative, Judge, but it goes way beyond that.  Obviously part of proof that's unfolding is there were numerous individuals involved in this case.  The witness' ability to describe and identify not only this defendant but the others involved in it is at issue in this case who I am certain will be charged in acting in concert as well, and the fact that these people described and identified an individual who, in fact, lifted forensic evidence at the scene now knowing that a chance occurrence is highly probative for this jury on the issue of assessing credibility as well.

                    . . . .

MR. BLACKSTONE:  Judge; there is no link between Alfredo Medina and Jose Fernandez in this trial; therefore, . . . a fingerprint expert who says he's got positive lifts against Medina is not proving anything against him.  It's just being used as Mr. McCarthy says to bolster the credibility of these two witnesses, but it bolsters their credibility with respect to Medina not with respect to Fernandez.  With respect to Fernandez, it bolsters nothing.  I just don't think there is any purpose for that kind of collateral attack.

THE COURT:  Before the testimony comes in, I am going to revisit this issue again. . . .

(Tr. 229, 232-35, emphasis added.)

The Court "revisit[ed]" the admissibility of Medina's fingerprints during the following

colloquy:

MR. BLACKSTONE:  First of all, I think your Honor has already told Mr. McCarthy that he can't introduce the conviction.

. . . .

THE COURT:  Well -- no.  By introducing the fingerprint doesn't indicate that Mr. Medina was convicted or whatever it was.

MR. BLACKSTONE:  Well, there is no probative value -- this is not a joint trial where it would obviously be admissible because it's being admitted against Medina.  Medina is out of the picture.  The question is, what is the evidence they have against Fernandez?  And the fact that two witnesses identify another person as a perpetrator is not probative.  The fact that that witness, that defendant, that person's fingerprints were found is not probative of this defendant's guilt.  It's probative of Medina's guilt and that's all --

THE COURT: I know [A.D.A.] McCarthy can state it far more cogently and with greater authority than I can, but your client's accused of felony murder.  Even if someone else fired the shots and he knew that that person had a gun and there was a certain -- designated felony being committed, then he's equally guilty as the person who fired the gun. The People have to demonstrate and prove beyond a reasonable doubt that there was more than one person acting together, acting in concert and to prove that there was another person present, not merely testimony of Mr. Tavares or Ms. Diaz, a fingerprint belonging to a stranger was found and that person was in the apartment and, according to the People's theory, Mr. Medina was acting in concert with Mr. Fernandez.  That's one of the crimes they have to prove beyond a reasonable doubt.  And a fingerprint comes in to show that it was another person in the apartment, not one of the occupants, and that's how he intends to show that.

MR. BLACKSTONE:  Judge, isn't that used for the purpose - - it's being used for the argument that the credibility of these two witnesses are <u>bolstering</u>.

THE COURT:  They have to, as one of the elements on felony murder, another participant, armed with a weapon, certain designated crime being committed, then that's a felony murder.  Even though they may not be able to prove that Mr. Fernandez fired that fatal shot.

MR. BLACKSTONE:  It does not require introduction of fingerprint evidence based on his testimony.

THE COURT:  But they have other evidence.

. . . .

[A.D.A.] MCCARTHY:  I'd only say on the state of this record, I think it's even more relevant at this point, since part of the cross-examination was an attack on the identification of Medina.  Part of the cross-examination was the fact that there could well have been two gunmen here, each firing one shot.  That's all out there now.  And so, I think evidence that's relevant, that shows who the second person is, I'm not looking to introduce the conviction, but certainly the presence of that person, the identification of that person, and the forensic evidence linking him, I think, is more than ever at this stage probative and highly relative in addition to the thoughts your Honor has put on the record.

MR. BLACKSTONE:  I didn't introduce the photograph.  Your Honor said it was admissible . . . because the person was going to identify it.  And when he says more or less, of course I have to ask those questions. . . . [W]hat does that have to do with evidence against Fernandez?  They're not trying Medina in this case.  They can't even introduce his conviction.  I just don't see how it's -- what they're using, Judge, no matter what theory may be applied, they just want to say, what, Tavares was right there and therefore he was right here and that's the only purpose they have in introducing it?  And I think that that shouldn't be allowed, because they had this tenuous case and then they're going to use -- come in backwards with evidence against another person in order to bolster it.

THE COURT: Evidence that another person was present in the apartment, participating in the -- as I indicated with a designated crime, attempted robbery, burglary two or burglary one, because of loaded guns, armed with operable guns were used, there are a number of designated crimes that the People must show in order to become a felony murder.  Not all felonies become felony murders. . . . But that is one of the elements the People have to prove beyond a reasonable doubt. . . . People acting in concert, another participant armed with a weapon, the individual on trial either was armed with a weapon or knew the other person was armed with a weapon and it's a designated crime.

(Tr. 288-93, emphasis added.)  Defense counsel requested "specific instructions that [A.D.A.] McCarthy not argue that his witnesses are credible against Fernandez because . . . their identification of Medina has been corroborated." (Tr. 293.)  Justice Silverman denied defense counsel's request

because such an argument by the prosecution would be a "proper response to whatever arguments [defense counsel] . . . raise[s] on witness credibility." (Tr. 293-94.)

Immediately before the testimony of the police fingerprint expert, Detective Perruzza, Justice Silverman again addressed the Medina fingerprint issue with counsel:

> THE COURT: . . . Besides Detective Ryan, [A.D.A.] McCarthy, who's your other witness?
>
> [A.D.A.] McCARTHY: Detective Perruzza, your Honor, who is the fingerprint expert and he's also outside the courtroom.
>
> THE COURT: He'll be testifying about the latent print of Mr. Medina?
>
> [A.D.A.] McCARTHY: Correct.
>
> THE COURT: Mr. Blackstone, you objected on the prior date to this evidence coming in.
>
> MR. BLACKSTONE: Yes.
>
> THE COURT: And I ruled that because Mr. Fernandez is charged with acting in concert, the People have to establish there is one or more people present in the apartment for the defendant to be acting [in] concert. While it doesn't go to whether Mr. Fernandez was or wasn't in the apartment, it does establish there was another party there involved in this particular incident. That's why I'm allowing the evidence to come in.
>
> MR. BLACKSTONE: I already made my argument that it's not being used for that purpose, but being used to bolster the credibility of Diaz, improperly.
>
> THE COURT: And if you wish, I can give a limiting instruction when Detective Perruzza testifies.
>
> MR. BLACKSTONE: Yes.
>
> . . . .

THE COURT:  I will only tell the jury that there's evidence of Mr. Medina's fingerprint being found in the apartment, that's an element, one or more people involved in the commission of the crime.  That's all I'm going to say.

I'm not going to say you can't use it to determine whether Miss Diaz did not make an accurate identification . . . .

(Tr. 469-71, emphasis added.)

Detective Daniel Perruzza testified that he examined the fingerprints that the crime scene unit found at Diaz's apartment and determined that two of Medina's fingerprints had been left on a red drum in the master bedroom. (Perruzza: Tr. 526-30, 534-35, 542, 549-54; McKenna: Tr. 195, 199-200.)[5]  Det. Perruzza testified that Fernandez did not leave any of the fingerprints recovered from apartment. (Perruzza: Tr. 533.)

**Summations**

Defense counsel argued that Diaz's identification of Fernandez was a case of "mistaken identification." (Tr. 582; see also Tr. 581-87.)  Defense counsel noted that Tavares was

_____

[5]     Justice Silverman instructed the jury that the fingerprint evidence was only being admitted to establish that Fernandez was acting in concert with another individual:

THE COURT:  Ladies and gentlemen, the Detective's testimony concerning the presence of Alfredo M[e]dina in that apartment that day is given to you for one reason.  Mr. Fernandez is accused of acting in concert with others.  This is to show that another individual, not Mr. Fernandez, but another individual[ ] allegedly involved in the crime was involved in that apartment on that date.  That's the only purpose of this particular evidence coming in.  Another person allegedly involved in the incident present in that apartment on that date, time and place. . . .

(Tr. 539; see also Tr. 551.)

not able to identify Fernandez at trial (Tr. 590), and that his January 1989 out of court identification, sixteen months after the shooting, "should be given no weight and has no value to you, the jury." (Tr. 593.)  Defense counsel stated that the proseution conceded that Fernandez's fingerprints were not found at the crime scene (Tr. 599, 602), and that while Medina's fingerprints were found, that was a "smoke screen" because "the prosecution has shown no connection between these two men." (Tr. 602.)

The prosecution responded that Diaz unequivocally identified Fernandez as one of the robbers.  (Tr. 606, 616-17.)  The prosecution argued that it proved its case because Tavares identified Medina as the man at the door, and Medina left his fingerprint, and "identified Jose Fernandez as the man who tried to murder him.  His testimony alone marks [Fernandez] as a murderer.  And the law only requires one [witness]."  (Tr. 621.)  "M[e]dina was there and left his fingerprint behind.  He also has been identified by Mildred [Diaz] and Juan Tavares."  (Tr. 613; see also Tr. 618-19, 621.)  The prosecutor noted that it was common sense for Medina's fingerprints to be found because he was the man who ransacked the apartment, while Fernandez was the "man who used the gun and who left with the gun, didn't leave a fingerprint but he left the imprint of his face in the mind of his victims."  (Tr. 616.)

**Verdict and Sentence**

On April 28, 2004, the jury convicted Fernandez of second degree murder.  (Tr. 720, 783-85.)  On May 11, 2004, Fernandez was sentenced to twenty-five years to life imprisonment. (See Dkt. No. 8: ADA Biedrzycki Aff. ¶ 4.)

H:\OPIN\FERNANDEZ-JOSE

**Fernandez's Direct Appeal**

Represented by new counsel (the Office of the Appellate Defender), Fernandez's appeal to the First Department claimed that the trial court erred by admitting Medina's fingerprints because the fingerprints were "entirely irrelevant to the question of Mr. Fernandez's guilt [,] . . . [their] admission greatly prejudiced Mr. Fernandez" and only served to "bolster" Diaz and Medina's identifications of Fernandez.  (Dkt. No. 8: ADA Biedrzycki Aff. Ex. 1: Fernandez 1st Dep't Br. at 17-30.)[6]

On February 23, 2006, the First Department unanimously affirmed Fernandez's conviction, holding that:

> The court providently exercised its discretion in admitting testimony that the fingerprints of a person with whom defendant allegedly acted in concert were found at the scene of the crime.  This evidence tended to prove that defendant acted in concert with other persons in the commission of felony murder, and the jurors are presumed to have followed the court's limiting instructions.  In any event, even if we were to find that the court erred in admitting the evidence, we would find the error to be harmless.

People v. Fernandez, 26 A.D.3d 280, 280-81, 808 N.Y.S.2d 900, 900-01 (1st Dep't 2006) (citations omitted).

---

[6]    Fernandez's First Department brief cited only state cases, not federal cases.  (Fernandez 1st Dep't Br. at 17-30.)  A single sentence stated that the error in admitting the fingerprint evidence "violated Mr. Fernandez's rights to due process under both the federal and state constitutions," and cited the Fifth and Fourteenth Amendment.  (Fernandez 1st Dep't Br. at 18.) Fernandez's First Department Reply Brief contained neither citation to any federal cases nor even passing reference to due process or the Fourteenth Amendment.  (See ADA Biedrzycki Aff. Ex. 3: Fernandez 1st Dep't Br.)

On March 21, 2006, Fernandez's counsel submitted a leave letter to the New York Court of Appeals seeking review of the admissibility of Medina's fingerprints. (ADA Biedrzycki Aff. Ex. 5: Fernandez 3/21/06 Ct. App. Leave Letter.) The letter argued that "[t]he Court of Appeals should agree to hear Mr. Fernandez's case in order to resolve an evident departmental split regarding the admissibility of evidence concerning a witness's identification of an accomplice not on trial." (Fernandez 3/21/06 Ct. App. Leave Letter at 4.) The letter did not refer to the federal Constitution, federal statute, federal cases or state cases citing federal law. (Fernandez 3/21/06 Ct. App. Leave Letter.)

On May 8, 2006, the New York Court of Appeals denied leave to appeal. People v. Fernandez, 6 N.Y.3d 894, 817 N.Y.S.2d 629 (2006).

**Fernandez's Federal Habeas Corpus Petition**

Fernandez raises the same claim in his habeas petition that he raised on direct appeal: that the trial court erred by admitting Medina's fingerprints because the fingerprint evidence was "entirely irrelevant to the question of Mr. Fernandez's guilt and where its admission greatly prejudiced Mr. Fernandez" and "served only to improperly bolster the identification of Mr. Fernandez." (Dkt. No. 2: Fernandez Br. at 13-14; see id. at 13-22.)

On February 15, 2008, the State filed its opposition to Fernandez's habeas petition, arguing that Fernandez's habeas claim is unexhausted but should be deemed exhausted and procedurally barred because Fernandez failed to raise the claim in federal constitutional terms before

the New York Court of Appeals (Dkt. No. 8: State Br. at 7-12), and in any event, the claim is not cognizable for habeas review (id. at 12-16).

On March 28, 2008, Fernandez's traverse "concede[d]" that his counsel's letter seeking leave to appeal to the Court of Appeals "made no references to any federal constitutional issues," but asserted that this was because counsel was ineffective. (Dkt. No. 13: Fernandez Traverse Aff. ¶¶ 16-18 (emphasis omitted) & Traverse Br. at 11.) Fernandez asked permission either to withdraw his habeas petition without prejudice or hold it in abeyance to allow him to exhaust ineffective assistance of counsel claims in state court. (Fernandez Traverse Aff. ¶¶ 15-22 & Traverse Br. at 9-21.) He also asserted a cursory claim of actual innocence. (Fernandez Traverse Aff. ¶¶ 20-21.)

The case was referred to me on January 12, 2009 (Dkt. No. 18) and on January 14, 2009, I directed that:

> Fernandez must bring his ineffective assistance claim in the proper state court by February 17, 2009. When Fernandez has fully exhausted his state collateral procedures, he must file an amended habeas petition in this Court within 30 days of the last state decision.
>
> Failure to comply with either of these two 30 day periods will result in dismissal of his current habeas petition.

(Dkt. No. 19: 1/14/09 Order.)

On January 26, 2009, Fernandez requested that the Court extend the February 17, 2009 deadline to March 17, 2009. (Dkt. No. 22: Fernandez 1/26/09 Letter.) I denied Fernandez's

request, explaining that "[t]he 30 day period comes from Supreme Court & Second Circuit caselaw." (Dkt. No. 22: 1/30/09 Memo Endorsed Order.)

On February 6, 2009, Fernandez filed a C.P.L. § 440.10 motion to vacate his conviction in Supreme Court, New York County.  (Dkt. No. 23: Fernandez 440 Motion.)  Fernandez argued in his § 440 motion that the trial court erred by admitting Medina's fingerprints and that he was denied his "Due Process Rights to a fair trial when he was denied the right to be present" at an April 21, 2004 hearing about whether Tavares would testify.  (Dkt. No. 23: Fernandez 440 Motion Aff. ¶¶ 1, 4-11 & Fernandez 440 Br. at 1-5.)

In a letter dated March 9, 2009, A.D.A. Nancy Killian argued that Fernandez "failed to comply with the terms" of the Court's January order holding his petition in abeyance, and requested that the Court dismiss or deny the petition for the reasons stated in the State's habeas brief. (Dkt. No. 24: ADA Killian 3/9/09 Letter.)  A.D.A. Killian noted that Fernandez's § 440 motion presented an "entirely novel claim" that "has nothing to do with [Fernandez]'s unexhausted claim concerning the admission of fingerprints (the sole issue in the original petition) or with any claim of ineffective assistance of counsel concerning the issue."  (ADA Killian 3/9/09 Letter.)

On March 9, 2009, I held that "Ms. Killian [was] correct that the CPL § 440 petition that Fernandez filed raised a totally new claim, not the ineffective assistance of appellate counsel claim that he indicated he wanted to raise in state court. Accordingly, the Court will rule only on the erroneous admission of evidence habeas claim in the original habeas petition." (Dkt. No. 24: 3/9/09 Memo Endorsed Order.)

On March 18, 2009, Fernandez moved for leave to file an amended petition to add a claim that Justice Silverman sentenced him to longer than "the Convention for the Mutual Extradition of Fugitives from Justice" permits.  (Dkt. No. 27: Fernandez Motion to Amend.)  I denied Fernandez's motion, stating that he "must first exhaust all claims in State court."  (Dkt. No. 27: 3/19/09 Memo Endorsed Order.)

## ANALYSIS

### I.  THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners."  Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[7]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[8] Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[9] "That federal law, as defined by the

---

[7]    See also, e.g., Knowles v. Mirzayance, 129 S. Ct. 1411, 1418 (2009); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[8]    Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[9]    Accord, e.g., Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law."); Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007) ("'Clearly established federal law' refers only to the holdings of the Supreme Court. No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas
                                                                                (continued...)

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>accord</u>, <u>e.g.</u>, <u>Davis</u> v. <u>Grant</u>, 532 F.3d 132, 140 (2d Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 1312, 2009 WL 425166 at *1 (Feb. 23, 2009).  "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110; <u>accord</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>Miller</u>, 499 F.3d at 140; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[10]

---

[9]    (...continued)
relief.  Leading by example, <u>Musladin</u> admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.") (citations & fn. omitted), <u>cert. denied</u>, 128 S. Ct. 1655 (2008); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d 587, 591 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1047, 124 S. Ct. 2171 (2004); <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002); <u>Yung</u> v. <u>Walker</u>, 341 F.3d 104, 109-110 (2d Cir. 2003); <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d 36, 42 (2d Cir.), <u>cert. denied</u>, 537 U.S. 909, 123 S. Ct. 251 (2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d 178, 184 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 309 (2d Cir. 2001).

[10]    <u>Accord</u>, <u>e.g.</u>, <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. at 1419 (The Supreme "Court has held on
(continued...)

In <u>Williams</u>, the Supreme Court explained that "[u]nder the 'unreasonable application'
clause, a federal habeas court may grant the writ if the state court identifies the correct governing
legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the
facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[11/]  However,
"[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct.
at 1522.  The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different
from an <u>incorrect</u> application of federal law." <u>Id</u>.[12/]  Rather, the issue is "whether the state court's

---

[10/]    (...continued)
numerous occasions that it is not 'an unreasonable application of clearly established federal
law' for a state court to decline to apply a specific legal rule that has not been squarely
established by this [Supreme] Court.") (quotation omitted); <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140;
<u>Brown</u> v. <u>Payton</u>, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S.
447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct.
1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 123 S. Ct. at 1173-74; <u>Hawkins</u> v. <u>Costello</u>, 460
F.3d 238, 242 (2d Cir. 2006), <u>cert. denied</u>, 549 U.S. 1215, 127 S. Ct. 1267 (2007); <u>Henry</u> v.
<u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210,
219 (2d Cir.), <u>cert. denied</u>, 546 U.S. 889, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d
at 591; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109;
<u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>,
228 F.3d at 127-28.

[11/]    <u>Accord</u>, <u>e.g.</u>, <u>Wadddington</u> v. <u>Sarausad</u>, 129 S. Ct. 823, 831 (2009); <u>Brown</u> v. <u>Payton</u>, 544
U.S. at 141, 125 S. Ct. at 1439; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2534-35;
<u>Brisco</u> v. <u>Ercole</u>, 565 F.3d 80, 87 (2d Cir. 2009); <u>Jones</u> v. <u>West</u>, 555 F.3d 90, 96 (2d Cir.
2009); <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006),
<u>cert. denied</u>, 549 U.S. 1257, 127 S. Ct. 1383 (2007); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122;
<u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181.

[12/]    <u>See also</u>, <u>e.g.</u>, <u>Wadddington</u> v. <u>Sarausad</u>, 129 S. Ct. at 831; <u>Yarborough</u> v. <u>Alvarado</u>, 541
U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u>
v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas
(continued...)

application of clearly established federal law was objectively unreasonable."  <u>Williams</u> v. <u>Taylor</u>,

529 U.S. at 409, 120 S. Ct. at 1521.[13/]  "Objectively unreasonable" is different from "clear error."

<u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness.").  This is a

"substantially higher threshold" than incorrectness.  <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. at 1420.[14/]

---

[12/]     (...continued)
court may not issue the writ simply because that court concludes that the state-court decision
applied [a Supreme Court case] incorrectly.'") (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19,
24-25, 123 S. Ct. 357, 360 (2002)); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175;
<u>Brisco</u> v. <u>Ercole</u>, 565 F.3d at 87-88; <u>Jones</u> v. <u>West</u>, 555 F.3d at 96; <u>Davis</u> v. <u>Grant</u>, 532 F.3d
at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v.
<u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219;
<u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v.
<u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's
decision was not an unreasonable application of, or contrary to, clearly established federal
law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment
its application was erroneous.").

[13/]     <u>Accord</u>, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v.
<u>Smith</u>, 539 U.S. at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct.
at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>,
537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Mosby</u> v.
<u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 128 S. Ct. 75 (2007); <u>Hawkins</u>
v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at
68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v.
<u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002); <u>Loliscio</u> v.
<u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 128-29.

[14/]     However, the Second Circuit has explained "that while '[s]ome increment of incorrectness
beyond error is required . . . the increment need not be great; otherwise, habeas relief would
be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"
<u>Jones</u> v. <u>Stinson</u>, 229 F.3d at 119 (quoting <u>Francis S.</u> v. <u>Stone</u>, 221 F.3d 100, 111 (2d Cir.
2000)).; <u>accord</u>, <u>e.g.</u>, <u>Brisco</u> v. <u>Ercole</u>, 565 F.3d at 88; <u>Jones</u> v. <u>West</u>, 555 F.3d at 96; <u>Davis</u>
(continued...)

"[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[15/] "Even if the state court issues a decision 'contrary to' clearly established Supreme Court law, . . . a petitioner 'cannot obtain relief . . . unless application of a *correct* interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir.), cert. denied, 128 S. Ct. 2910 (2008).

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme

---

[14/]    (...continued)
v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[15/]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1426 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); Rodriguez v. Miller, 499 F.3d at 143; Hawkins v. Costello, 460 F.3d at 243.

Court defined, legal principle to situations which that principle should have, in reason, governed."

<u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[16/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference."  <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>accord</u>, <u>e.g.</u>, <u>Bell</u> v. <u>Cone</u>, 543 U.S. at 455, 125 S. Ct. at 853; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d at 519.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

<u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 312; <u>accord</u>, <u>e.g.</u>, <u>Bell</u> v. <u>Cone</u>, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); <u>Early</u> v. <u>Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be

---

[16/]   <u>Accord</u>, <u>e.g.</u>, <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140-41; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>see</u> <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "if any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference."); but cf. Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (A "contrary-to-fact construction is not the same as an alternative holding. . . . We decline to read a contingent observation as an 'adjudication on the merits.'"  De novo review applies in such a case.).

Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in

similar circumstances." Jimenez v. Walker, 458 F.3d at 145 & n.16; accord, e.g., Clark v. Perez, 510

F.3d 382, 394 (2d Cir.), cert. denied, 129 S. Ct. 130 (Oct. 6, 2008).  Using these three factors, the

court should

> classify the decision as either:
>
> (1)    fairly appearing to rest primarily on federal law or to be interwoven with federal law or
>
> (2)    fairly appearing to rest primarily on state procedural law.
>
> Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim.  Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d).  The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar.  Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar.  No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.
>
> The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised.  The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello,

460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a

petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the

adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the

merits [and no procedural bar], then the pre-AEDPA, <u>de novo</u> standard of review applies."  <u>Cotto</u>

v. <u>Herbert</u>, 331 F.3d 217, 230 (2d Cir. 2003); <u>see also</u> <u>Jimenez</u> v. <u>Walker</u>, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable

application of established law, resulting in constitutional error, it must next consider whether such

error was harmless."  <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a

deferential review standard for state court factual determinations:  "a determination of a factual issue

made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); <u>accord</u>, <u>e.g.</u>, <u>Lynn</u>

v. <u>Bliden</u>, 443 F.3d at 246-47; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 220.  "The petitioner bears the burden

of 'rebutting the presumption of correctness by clear and convincing evidence.'"  <u>Parsad</u> v. <u>Greiner</u>,

337 F.3d at 181 (quoting § 2254(e)(1)); <u>accord</u>, <u>e.g.</u>, <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246-47.

## II.    FERNANDEZ'S CLAIM SHOULD BE DENIED AS UNEXHAUSTED BUT DEEMED EXHAUSTED AND PROCEDURALLY BARRED

Fernandez's First Department brief claimed that the trial court erred by admitting

Medina's fingerprints because they were "entirely irrelevant," "greatly prejudiced Mr. Fernandez"

and only served to "bolster" Diaz and Medina's identification of Fernandez.  (<u>See</u> page 12 above.)

Fernandez's First Department brief did not cite to any federal cases, but a single sentence, citing the

Fifth and Fourteenth Amendments, argued that the admission of Medina's fingerprints "violated Mr.

Fernandez's rights to due process under both the federal and state constitutions."  (<u>See</u> page 12 n.6

above.)

Fernandez's leave letter to the New York Court of Appeals argued a purely state law reason for the Court of Appeals to hear Fernandez's case: that "an evident departmental split [exists] regarding the admissibility of evidence concerning a witness's identification of an accomplice not on trial." (<u>See</u> page 13 above.)  The letter did not reference the federal Constitution, federal statute, federal cases or state cases employing constitutional analysis.  (<u>See</u> page 13 above.)

A.       **The Exhaustion Doctrine:  Background**

Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A).[17]  As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." <u>Rose</u> v. <u>Lundy</u>, 455 U.S. at 518, 102 S. Ct. at 1203; <u>accord</u>, <u>e.g.</u>, <u>O'Sullivan</u> v. <u>Boerckel</u>,  526 U.S. at 845, 119 S. Ct. at 1732.

The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

---

[17]       <u>See</u>, <u>e.g.</u>, <u>O'Sullivan</u> v. <u>Boerckel</u>, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); <u>Rose</u> v. <u>Lundy</u>, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948" in 28 U.S.C. § 2254.); <u>Picard</u> v. <u>Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); <u>Bossett</u> v. <u>Walker</u>, 41 F.3d 825, 828 (2d Cir. 1994), <u>cert. denied</u>, 514 U.S. 1054, 115 S. Ct. 1436 (1995); <u>Pesina</u> v. <u>Johnson</u>, 913 F.2d 53, 54 (2d Cir. 1990); <u>Daye</u> v. <u>Attorney Gen.</u>, 696 F.2d 186, 190-94 (2d Cir. 1982) (en banc), <u>cert. denied</u>, 464 U.S. 1048, 104 S. Ct. 723 (1984).

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

Diaz v. Coombe, 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.) (quoting Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)); accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 843-48, 119 S. Ct. at 1732-34.

"The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney Gen., 696 F.2d at 191.[18/] The Second Circuit has held that a federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. E.g., Cox v. Miller, 296 F.3d at 99; Jones v. Vacco, 126 F.3d at 413-14; Grady v. LeFevre, 846 F.2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89 (2d Cir. 1984); Daye v. Attorney Gen., 696 F.2d at 191. In Daye, the Second Circuit en banc stated:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

---

[18/]   Accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 844, 119 S. Ct. at 1732; Picard v. Connor, 404 U.S. at 275-76, 92 S. Ct. at 512; Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir.), cert. denied, 540 U.S. 1046, 124 S. Ct. 804 (2003); Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002), cert. denied, 537 U.S. 1192, 123 S. Ct. 1273 (2003); Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997).

Daye v. Attorney Gen., 696 F.2d at 194.[19]

The Supreme Court has confirmed the long-held view of the Second Circuit that "a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement."  O'Sullivan v. Boerckel, 526 U.S. at 839-40, 119 S. Ct. at 173.[20]

---

[19]  Accord, e.g., Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005); Rosa v. McCray, 396 F.3d 210, 217-18 (2d Cir.), cert. denied, 126 S. Ct. 215 (2005); St. Helen v. Senkowski, 374 F.3d 181, 182-83 (2d Cir. 2004), cert. denied, 543 U.S. 1058, 125 S. Ct. 871 (2005); Cox v. Miller, 296 F.3d at 99; Ramirez v. Attorney Gen., 280 F.3d 87, 95 (2d Cir. 2001); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 124 (2d Cir. 1995), cert. denied, 520 U.S. 1106, 117 S. Ct. 1112 (1997); Grady v. LeFevre, 846 F.2d at 864; Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986); Petrucelli v. Coombe, 735 F.2d at 688.

[20]  Accord, e.g., accord, e.g., Rosa v. McCray, 396 F.3d at 217; Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir.), cert. denied, 544 U.S. 1025, 125 S.Ct. 1996 (2005); Calderon v. Keane, 115 Fed. Appx. 455, 457 (2d Cir. 2004); Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003); Ramirez v. Attorney Gen., 280 F.3d at 94; Jordan v. LeFevre, 206 F.3d 196, 198 (2d Cir. 2000); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir.), cert. denied, 531 U.S. 819, 121 S. Ct. 59 (2000); Bossett v. Walker, 41 F.3d at 828 ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); Pesina v. Johnson, 913 F.2d at 54 ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition," citing Daye); Daye v. Attorney Gen., 696 F.2d at 191 n.3 ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had.").

### B.   Fernandez's Claim was not Presented in Federal Terms to the New York Court of Appeals and Thus is Unexhausted But Deemed Exhausted and Procedurally Barred

Fernandez "concedes" that his habeas claim is unexhausted because his appellate counsel "made no references to any federal constitutional issues or claims" in his leave letter.  (Dkt. No. 13: Fernandez Traverse Aff. ¶ 16, emphasis omitted.)[21/]  See generally Rodriguez v. Conway, 07 Civ. 9863, 2009 WL 636503 at *14-16 (S.D.N.Y. Mar. 13, 2009) (Peck, M.J.) (& cases cited therein).  Fernandez's unexhausted claim therefore also is deemed exhausted because, "'[f]or exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."'"  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (quoting Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9 (1989))).[22/]  "In such a

---

[21/]   Although Fernandez's First Department brief made a passing reference to "due process" and the Constitution, his Court of Appeals leave letter failed to assert his claim in federal constitutional terms.  See Brown v. Senkowski, 152 Fed. Appx. 15, 17-18 (2d Cir. 2005) ("Any fair reading of petitioner's application for leave to appeal to the New York Court of Appeals indicates that petitioner's application rested exclusively on state law grounds," thus "fail[ing] to alert the New York Court of Appeals as to the federal constitutional nature of petitioner's . . . claim.").  Rather, the leave letter only discussed how Fernandez's case affected state law and did not mention "due process" or similar constitutional phrases or cite federal constitutional law.  Nor did his claim call to mind a specific right protected by the Constitution or set forth a pattern of facts within the mainstream of constitutional litigation.

[22/]   Accord, e.g., Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059 (1989) ("It would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined"); St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) ("even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law."); DiGuglielmo
(continued...)

case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d at 120.  Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts.  E.g., St. Helen v. Senkowski, 374 F.3d at 183; DiGuglielmo v. Smith, 366 F.3d at 135; McKethan v. Mantello, 292 F.3d at 122-23; Ramirez v. Attorney Gen., 280 F.3d at 94; Reyes v. Keane, 118 F.3d at 139; Bossett v. Walker, 41 F.3d at 828; Washington v. James, 996 F.2d 1442, 1446-47 (2d Cir. 1993), cert. denied, 510 U.S. 1078, 114 S. Ct. 895 (1994); Grey v. Hoke, 933 F.2d at 120-21.

Fernandez is now barred from raising his claim in state court because he could have raised the federal constitutional nature of his claim in his leave letter, but did not.  Because he had to seek leave to appeal within thirty days of the First Department's decision, see C.P.L. § 460.10(5)(a), he cannot now seek leave to appeal, nor can he bring the claim in a C.P.L. proceeding, since it could have been raised on appeal.  See C.P.L. § 440-10(2)(c).  As the Second Circuit explained in Washington v. James:

> Consequently, we do not believe [petitioner] has fairly presented to the state
> courts his constitutional objection. . . . [T]he state courts have not had an opportunity

---

22/   (...continued)
v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (petitioner's procedurally defaulted claims deemed exhausted where he could no longer obtain state-court review because of his procedural default); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"), cert. denied, 129 S. Ct. 233 (2008); Ramirez v. Attorney Gen., 280 F.3d 87, 94 (2d Cir. 2001); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) ("[I]f the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted."), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995).

to address the federal claim raised on habeas review and this normally would preclude our review of that claim.

. . . .

As we have already noted, this preclusion is not technically the result of a failure to exhaust state remedies, but is due to a procedural default. [Petitioner] no longer has the right to raise his claim under New York law either on direct appeal, . . . or on collateral review. New York's collateral procedures are unavailable because [petitioner] could have raised the claim on direct review but did not. See N.Y. Crim. Proc. Law § 440.10(2)(c). Therefore [petitioner] has no further recourse in state court. See 28 U.S.C. § 2254(c); Grey v. Hoke, 933 F.2d [at] 120. . . . Because he failed to raise his claim in state court and no longer may do so, his claim is procedurally defaulted.

996 F.2d at 1446-47.[23/]

To avoid a procedural default on his unexhausted claim, Fernandez would have to "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,'" i.e., a showing of "actual innocence." Harris v. Reed, 489 U.S. at 262, 109 S. Ct. at 1043 (citations omitted); accord,

---

[23/]   See also, e.g., Galdamez v. Keane, 394 F.3d 68, 73-74 (2d Cir.) ("a petitioner cannot claim to have exhausted his or her remedies by dint of no longer possessing 'the right under the law of the State to raise, by any available procedure, the question presented,' if at some point the petitioner had that right but failed to exercise it.") (citation omitted), cert. denied, 544 U.S. 1025, 125 S. Ct. 1996 (2005); DiGuglielmo v. Smith, 366 F.3d at 135 (Second Circuit affirmed denial of petitioner's habeas claim because "his claims were not properly exhausted and . . . his procedural default is not excusable."); Jones v. Keane, 329 F.3d 290, 296 (2d Cir.) ("[Petitioner] has procedurally defaulted his vagueness claim since New York's procedural rules now bar [petitioner] from raising it in New York courts. Further direct review by the Court of Appeals is no longer available. . . ."), cert. denied, 540 U.S. 1046, 124 S. Ct. 804 (2003); Reyes v. Keane, 118 F.3d at 139 ("Section 440.10(2)(c) of New York's Criminal Procedure Law mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record.") (emphasis added).

e.g., Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991).[24/]

Fernandez's traverse alleged "cause and prejudice" due to appellate counsel's failure to raise the federal constitutional nature of his claim in the leave letter.  (See page 14 above.) Ineffective assistance can constitute "cause" for failure to exhaust a federal claim, so long as the ineffective assistance claim itself has been raised in state court.  See, e.g., Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *21 (S.D.N.Y. 8, 2004) (Peck, M.J.) (citing Sup. Ct. & 2d Cir. precedent).  This Court granted Fernandez the opportunity to exhaust his claim of ineffective assistance of appellate counsel in state court, but Fernandez failed to take advantage of the opportunity.  (See pages 14-15 above.) Fernandez's traverse also alleged that he is actually innocent, but did not provide any new evidence or support for this conclusory assertion.  (See page 14 above). To claim actual innocence, a petitioner must show more than the prosecution's evidence was weak or even insufficient; rather, he must present new evidence (such as DNA evidence) of his innocence. See, e.g., Murden v. Artuz, 497 F.3d 178, 1194 (2d Cir. 2007) ("'To demonstrate actual innocence a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'  This requires 'a stronger showing' than the showing of

---

[24/]      See also, e.g., Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005); DeBerry v. Portuondo, 403 F.3d 57, 64 (2d Cir.), cert. denied, 546 U.S. 884, 126 S. Ct. 225 (2005); St. Helen v. Senkowski, 374 F.3d at 183-84; DiGuglielmo v. Smith, 366 F.3d at 135;  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

prejudice necessary to prevail on an ineffective assistance claim.  Actual innocence requires 'not

legal innocence but factual innocence.'") (citations omitted).  Accordingly, Fernandez has failed to

make a sufficient showing of cause, prejudice or actual innocence.  Thus, Fernandez's habeas claim

should be <u>DENIED</u> as barred from habeas review.

### III.    IN ANY EVENT, FERNANDEZ'S BOLSTERING CLAIM IS NOT COGNIZABLE ON HABEAS REVIEW

Fernandez claims that Medina's fingerprints "improperly bolster[ed]" Tavares and

Diaz's identification of Fernandez.  (Dkt. No. 2: Fernandez Habeas Br. at 13-23.)  Even if the claim

were not barred as unexhausted but deemed exhausted and procedurally barred, the claim still should

be <u>DENIED</u>.  It is well-settled that "bolstering" is a state law issue that is not cognizable on federal

habeas review.  <u>E.g.</u>, <u>Warren</u> v. <u>Conway</u>, No. 07-CV-4117, 2008 WL 4960454 at *21 (E.D.N.Y.

Nov. 18, 2008) ("While New York law prohibits bolstering, 'it is not forbidden by the Federal Rules

of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process rights to a

fair trial.'  Courts in this circuit have repeatedly held that 'the concept of "bolstering" really has no

place as an issue in criminal jurisprudence based in the United States Constitution,' and is a state law

evidentiary issue.  Accordingly, petitioner's claim that the trial court improperly admitted bolstering

testimony on redirect examination raises a state law evidentiary issue and not a federal constitutional

question. Therefore, habeas relief is not available on this claim.") (citations omitted); <u>King</u> v.

<u>Greiner</u>, 02 Civ. 5810, 2008 WL 4410109 at *34 (S.D.N.Y. Sept. 26, 2008) (Peck, M.J.) ( & cases

cited therein); <u>Severino</u> v. <u>Phillips</u>, 05 Civ. 475, 2008 WL 4067421 at *11 (S.D.N.Y. Aug. 25, 2008)

("The overwhelming weight of authority in this Circuit holds that the admission of testimony

concerning a pre-trial identification that bolsters other identification testimony does not rise to the level of a constitutional violation, even when such testimony is improper under state law.") (citing cases); Murray v. Schultz, 05 Civ. 0472, 2005 WL 1523504 at *16 (S.D.N.Y. June 29, 2005) (Peck, M.J.); Mendoza v. McGinnis, 03 Civ. 2598, 2004 WL 736894 at *8 (S.D.N.Y. Apr. 5, 2004) ("An allegation of improper bolstering does not establish a federal constitutional claim that is cognizable on habeas corpus review" where petitioner claimed that a witness' "testimony constituted improper bolstering of [another witness'] pre-trial identification."); Carr v. Fischer, 283 F. Supp. 2d 816, 836-37 (E.D.N.Y. 2003) (Petitioner's claim that the admission of two 911 tapes constituted improper bolstering is not cognizable on habeas review.); Diaz v. Greiner, 110 F. Supp. 2d 225, 234 (S.D.N.Y.2000) ("Bolstering claims have been (expressly) held not to be cognizable on federal habeas review."); Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y.1978) (Weinfeld, D.J.) ("This Circuit has never regarded the practice [of bolstering] as inimical to trial fairness.").[25/]

---

[25/]    See also, e.g., Bailey v. New York, 01 Civ. 1179, 2001 WL 640803 at *8 (S.D.N.Y. June 8, 2001) (Peck, M.J.); Huber v. Schriver, 140 F. Supp. 2d 265, 279-80 (E.D.N.Y. 2001); Steed v. State of N.Y. Executive Dep't Div. of Parole, 00 Civ. 2293, 2000 WL 1593342 at *7 (S.D.N.Y. Oct. 25, 2000) ("the issue of bolstering has never been presented to the Supreme Court because it is a matter of state law"); Mendez v. Artuz, No. 98 Civ. 2652, 2000 WL 722613 at *32 n.23 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411 (2d Cir. 2002), cert. denied 537 U.S. 1245, 123 S. Ct. 1353 (2003); Torres v. Miller, No. 97-CV-4406, 1998 WL 355322 at *2 (E.D.N.Y. May 5, 1998) ("Petitioner's third claim, that a witness for the People improperly bolstered the eyewitness's testimony, does not raise a federal constitutional claim cognizable on habeas corpus.  This is a state evidentiary matter based on state law, and is beyond the scope of this Court's review."); Harris v. Hollins, 95 Civ. 4376, 1997 WL 633440 at *3 (S.D.N.Y. Oct. 14, 1997) (petitioner's bolstering claim "failed to state a federal constitutional claim.  'The concept of "bolstering" really has no place as an issue in criminal jurisprudence
(continued...)

## CONCLUSION

For the reasons set forth above, Fernandez's habeas petition should be <u>DENIED</u> in its entirety and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.

---

<u>25</u>/    (...continued)

based on the United States Constitution. It is at most a New York State rule or policy, . . . [v]iolation of [which] does not rise to a constitutional level.'"); <u>Malik</u> v. <u>Khoenan</u>, 94 Civ. 8084, 1996 WL 137478 at *4 (S.D.N.Y. Mar. 26, 1996) ("A claim of bolstering is not a federal constitutional claim cognizable on habeas review."); <u>Connolly</u> v. <u>Artuz</u>, No. 93-CV-4470, 1995 WL 561343 at *7-8 (E.D.N.Y. Sept. 15, 1995); <u>Styles</u> v. <u>Van Zandt</u>, 94 Civ. 1863, 1995 WL 326445 at *5 (S.D.N.Y. May 31, 1995) ("a claim of improper 'bolstering' is not a cognizable basis of federal habeas relief"), <u>aff'd mem.</u>, 101 F.3d 684 (2d Cir.), <u>cert. denied</u>, 519 U.S. 936, 117 S. Ct. 313 (1996); <u>Ortiz</u> v. <u>State of N.Y.</u>, 93 Civ. 3062, 1993 WL 187875 at *1 (S.D.N.Y. May 25, 1993) ("A claim of 'bolstering' is not a federal constitutional claim cognizable on habeas review."); <u>Battee</u> v. <u>Williams</u>, No. 91-CV-0154, 1993 WL 117530 at *3 (W.D.N.Y. April 8, 1993) ("Bolstering is at most a state law evidentiary concept . . . and violation of that evidentiary rule does not rise to a federal constitutional level."); <u>Billups</u> v. <u>Costello</u>, 91 Civ. 6296, 1992 WL 170650 at *4 (S.D.N.Y. July 6, 1992); <u>Vega</u> v. <u>Berry</u>, 90 Civ. 7044, 1991 WL 73847 at *1 (S.D.N.Y. Apr. 29, 1991) ("Although bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial.") (fn. omitted); <u>Cao</u> v. <u>Mann</u>, 89 Civ. 5312, 1990 WL 89363 at *4 (S.D.N.Y. June 18, 1990); <u>Ayala</u> v. <u>Hernandez</u>, 712 F. Supp. 1069, 1074 (E.D.N.Y. 1989) (police "bolstering" of eyewitness identification testimony held to be, at most, violation of state rule, and thus not could not form basis for constitutional claim); <u>Snow</u> v. <u>Reid</u>, 619 F. Supp. 579, 582 (S.D.N.Y. 1985) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy . . . . Violation of that rule . . . does not rise to a constitutional level.").

See also Fed. R. Civ. P. 6.[26/]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 615, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Sullivan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

---

[26/]    If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from defense counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c)

37

<u>McCarthy</u> v. <u>Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(d).

Dated:       New York, New York
             June 8, 2009

                                        Respectfully submitted,

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies to:   Jose Fernandez
             Nancy Killian, Esq.
             Judge Richard J. Sullivan

H:\OPIN\FERNANDEZ-JOSE